UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GERARD V. JOSEPH, | ) | Case No. 4:07 CV 352 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| TAYLOR STEEL, INC., | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

This case began as a complaint requesting production of a summary plan description under 29 U.S.C. §1024(b)(4), and seeking assessment of penalties and attorney fees. This sole issue was resolved, and simultaneously, by mutual agreement, the parties requested that the court resolve the amount of monthly disability. The court agreed to this request in this matter before it on consent of the parties under 28 U.S.C. §636(c). Accordingly, the issues raised in the plaintiff's motion for declaratory judgment are deemed to be an amendment of the complaint pursuant to **FED. R. CIV. P**. 15(b).

*Issue:*

The parties have agreed that the only remaining issue in this case in the amount of monthly disability pension benefits to which plaintiff is entitled under the Taylor Steel, Inc. Pension Plan and Trust, known henceforth as the "**Plan**." Taylor Steel, Inc., as Plan administrator, contends that under the Plan**,** plaintiff is entitled to a monthly disability benefit of $184.57 (reduced to $160.46 if Plaintiff selects a 100% joint and survivor annuity). Plaintiff argues that under the terms of the **Summary Plan Description** (not the Plan itself) he is entitled to a monthly disability benefit of $266.24 (reduced to $226.27 if Plaintiff elects a 100% joint and survivor annuity).

*Facts:*

The material facts are not disputed. The Plan provides three types of pensions: normal retirement, early retirement, and disability retirement.  Plaintiff worked for Taylor Steel, Inc., until he became disabled in May 2006, and applied for disability retirement. There is no question that plaintiff qualifies for disability retirement under the terms of the Plan.  Plaintiff has vested pension rights under the disability retirement provisions of the Plan. This pertinent part of the Plan reads:

> 5.4 DISABILITY RETIREMENT BENEFITS
>
> > (a) If a Participant becomes Totally and Permanently Disabled pursuant to Section 1.50 prior to retirement or separation from service, and such condition continues for a period of six (6) consecutive months and by reason thereof such Participant's status as an Employee ceases, then said Disabled Participant shall be entitled to receive the Actuarial Equivalent of the Participant's Accrued Benefit . . . . In the event of a Participant's Total and Permanent Disability, the Administrator shall direct the Trustee to commence payment of the benefits payable hereunder pursuant to the provisions of Sections 5.7 and 5.9 as though the participant had retired.   (Ex. C, pp.24-25.)

Under the terms of this Plan, first, a disabling condition which endures for six months entitles the pension recipient to the "actuarial equivalent" of the accrued benefit. Second, when the conditions are met for a disability pension, Taylor Steel, Inc., as Plan administrator shall order payment of benefits under two general provisions which allow the recipient to elect or waive a joint and survivorship annuity (§5.7) and which allow recipient to defer distribution of payment (§5.9).

These two sentences were summarized in the Summary plan description provided to plaintiff somewhat differently, as follows:

3

> If you become disabled while a participant and your condition continues for a period of six months, you will receive a disability benefit equal to an actuarial equivalent of your Accrued Benefit payable at your Normal Retirement Date.
>
> If you become disabled while a participant, *you will be entitled to 100% of your Accrued Benefit*. Payment of your disability benefits will be made to you as if you had retired. (emphasis supplied)

(Ex. A p. 10, Article IV of the Summary Plan Description entitled "Disability Benefits")

The first sentence accurately tracks its model found in §5.4 of the Plan governing disability for a period of six months to be followed by payment of the "actuarial equivalent" of the accrued benefit. It is the second sentence quoted above that is at the heart of this dispute. Unlike the Plan's model provision which merely directs payment of benefits "In the event of a Participant's Total and Permanent Disability," the language used in the summary plan description adds entitlement to "100% of your Accrued Benefit." This additional language clearly does not appear in the final sentence of §5.4 of the Plan.

Taylor Steel, Inc. provided plaintiff with annual Plan "Valuation Statements" showing the amount of his accrued benefit to date. The Valuation Statement for January 1, 2006 stated plaintiff had a 100% vested accrued monthly pension benefit of $239.61. (Ex. D). Plaintiff worked during the first half of 2006 earning additional service credit, which is reflected in the Valuation Statement for January 1, 2007. This final Valuation Statement states plaintiff had a 100% vested accrued monthly benefit of $266.24. (Plaintiff's Ex. B). Both plaintiff and Taylor Steel, Inc. agree that their respective calculations of disability pension benefits begin with this amount as the Accrued Benefit.

4

Taylor Steel, Inc. argues that the first sentence of the pertinent summary plan description provisions reads plaintiff will receive a disability benefit equal to the *actuarial equivalent* of the accrued benefits he would have received. Taylor Steel, Inc., interprets this to require a calculation based on plaintiff's normal retirement date at age 65 in the year 2011, reduced by a formula computed beginning at six months after disability, *i.e.*, November 1, 2006 . Taylor Steel, Inc. argues that the actuarial equivalent of $266.24 payable commencing May 1, 2011 is $184.57. This actuarial equivalent computation begins by reducing the accrued monthly benefit from $266.24 to $184.57, and is further reduced due to plaintiff's election of a 100% joint and survivor annuity with his wife, which Taylor Steel, Inc. calculates to a monthly benefit of $160.46.(Defendant's Exhibit C).

*Law:*

Jurisdiction over this matter begins with 29 U.S.C. §1132(e)(1) and 29 U.S.C. §1132(a)(1)(B) which allows a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his right to future benefits under the terms of the plan." Plaintiff, however, is not seeking to enforce the terms of the Plan, but to enforce a more advantageous position taken from plaintiff's interpretation of the summary plan description. However, subject matter jurisdiction is conferred under the foregoing statutes for judicial resolution of discrepancies between a plan and its summary. See *Gors v. Venoy Palmer Market, Inc*., 578 F. Supp. 365 (E.D. Mich. 1984).

Plaintiff's argument is legally acceptable in the Sixth Circuit, which like the Third, Fifth, Seventh, and Ninth Circuits, has " give[n] effect to summary plan descriptions without a clear showing by the participant of reliance or prejudice." 2 Gary Boren and Norman Stein, *Qualified*

*Deferred Compensation Plans* § 16:36 & n. 7 (Nov. 2007); and see *Edwards v. State Farm Mutual Automobile Insurance, Co.*, 851 F.2d 134, 136 (6th Cir.1988); *Helwig v. Kelsey-Hayes Co.*, 93 F.3d 243 (6th Cir.1996), *cert. denied*, 519 U.S. 1059 (1997); *Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 850-51 (6th Cir. 2000); *Haus v. Bechtel Jacobs Co., LLC* 491 F.3d 557, 564-566 (6th Cir. 2007)(although the decision included the statement that plaintiff relied on the summary plan description to his detriment). The Sixth Circuit's position is that, "[a]lthough in the instant case, the appellee relied to his detriment ... existing precedent does not dictate that a claimant who has been misled by summary descriptions must prove detrimental reliance. Congress has promulgated clear directives prohibiting misleading summary descriptions. This court elects not to undermine the legislative command by imposing technical requirements upon the employee." *Edwards v. State Farm Mutual Auto. Ins. Co.*, 851 F.2d at 137. In *Haus*, this principle from *Edwards* was extended to a situation where the conflict arose not between the plan and its summary, but between the plan administrator's interpretation of the plan and its summary. *Id.,* 491 F.3d at 566.

It is critical that there is a conflict between a plan and its summary- a point which is especially stressed in unreported decisions where the participant or beneficiary had failed to establish inconsistency. See *McGrew v. General Motors Corp*., 159 Fed. Appx. 616, 619 (6th Cir. Aug. 25, 2005)(discharged employee utilized inapplicable salaried plan summary, and correct plan summary for non-salaried employees included exclusion for discharged employee); *Balone v. TRW Sterling Plant Pension Plan*, 130 Fed. Appx. 761, 765 (6th Cir. May 3, 2005)(plan summary's silence on standard of review was not in conflict with plan's arbitrary and capricious standard of review); and see *Sprague v. General Motors Corp*., 133 F.3d 388, 401 (6th Cir. 1998)("[T]he principle

announced in *Edwards* does not apply to silence."). There clearly is a conflict between §5.4 of the Plan and its corresponding summary under Article IV of the summary plan description.

*Conflict Within Summary Plan Description*:

This situation at hand, though, enters uncharted legal territory because there is not only external conflict between the Plan and its summary, but also internal conflict between plan summary provisions. One provision informs the disability retirement participant, "you will receive a disability benefit equal to an actuarial equivalent of your Accrued Benefit payable at your Normal Retirement Date," while the following provision reads, "*you will be entitled to 100% of your Accrued Benefit* (emphasis supplied)." There is no question under *Edwards* and its progeny that the summary plan description is controlling, but which provision controls when the summary plan description is itself internally inconsistent.

One point is clear from precedent in this Circuit, which is that the plan administrator is not able to control interpretation of the summary plan description through interpretation under the arbitrary and capricious standard, as the administrator is generally empowered to do in interpretation the plan itself. This point as emphasized in *Haus*:

> The principle underlying our decision in *Edwards*, and the summary plan disclosure obligations contained in ERISA § 1022, is ultimately one of pragmatic fairness. When an employer distributes a document that purports to summarize an employee's benefit information, a lay beneficiary should logically be able to rely on that summary rather than combing through the often nearly incomprehensible plan itself. Accordingly, a summary plan must be "written in a manner calculated to be understood by the average plan participant, and ... sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). Where an employer fails to satisfy the disclosure obligations contained in section 1022, such that the information contained in a

4:07 CV 0352                                          7

> summary plan description is in conflict with that of the plan itself, it is logical that the courts enforce the terms of the summary plan. Moreover, such a rule comports with the legislative intent underlying ERISA, which makes clear that, "[i]t is grossly unfair to hold an employee accountable for acts which disqualify him from benefits, if he had no knowledge of these acts, or if these conditions were stated in a misleading or incomprehensible manner in the plan booklets." H.R.Rep. NO. 93-533, 93rd Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 4639, 4646.

*Haus*, 491 F.3d at 565.

Taylor Steel's, Inc.'s argument would have the court ignore *Edward*'s principle and allow the Plan administrator to select the less favorable provision. Plaintiff seeks to apply a concept from the federal common law of contract interpretation regarding ambiguity. There is clearly an ambiguity present in the summary plan description, and plaintiff argues to apply the maxim that any ambiguity must be resolved against the drafter. Plaintiff borrows this concept from judicial interpretation of the plans themselves that, "to the extent that the Plan's language is susceptible of more than one interpretation, we will apply the 'rule of *contra proferentum*' and construe any ambiguities against . . . the drafting parties." See *University Hospitals of Cleveland*, 202 F.3d at 847.

Borrowing again from another maxim of contract construction, plaintiff argues that in interpreting the provisions of a plan, a plan administrator must adhere to the plain meaning of its language, as it would be construed by an ordinary person. See *Shelby County Healthcare Corporation v. Southern Council of Industrial Workers Health & Welfare Trust*, 203 F.3d 926 (6th Cir. 2000). The court finds plaintiff's argument to be reasonable and consistent with the underlying intent of *Edwards* and its progeny. In interpreting the provisions of the summary plan description under its plain meaning and as construed against the drafter, an ordinary person is informed that a

4:07 CV 0352                                                                                          8

participant taking early retirement because of disability would be entitled to 100% of the vested accrued disability benefits and payment would be made as if the participant had retired.

## CONCLUSION

Plaintiff concludes that under the plain meaning of the summary plan description he is entitled to $266.24 monthly reduced to $226.27 if he elects a 100% joint and survivor annuity. In view of the foregoing, this court finds that Plaintiff is entitled to 100% of his accrued benefits of $266.24 a month (reduced to $226.27 if Plaintiff selects the 100% joint survivor annuity) and plaintiff's motion for declaratory judgment is granted.

                                                            s/James S. Gallas
                                                       United States Magistrate Judge

Dated: February 14, 2008